UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | No. 3:22-CR-14-TAV-JEM |
| DAVID HENDERSON, | ) ) ) |  |
| Defendant. | ) |  |

**MEMORANDUM AND ORDER**

This matter came before the Court on January 16, 2025, for a hearing to determine whether Defendant David Henderson is competent to proceed to trial following a period of competency restoration. *See* 28 U.S.C. § 636(b). Assistant United States Attorney Frank M. Dale, Jr., appeared on behalf of the Government. Attorney Robert R. Kurtz represented Defendant Henderson, who was also present.

Considering the Forensic Report and Certificate of Competency [Doc. 64, SEALED]; the testimony, exhibits, and argument presented at the hearing; and the record as a whole; the undersigned finds Defendant is competent to proceed.

**I.     BACKGROUND**

By an Order entered on July 31, 2023, the undersigned found by a preponderance of the evidence that Defendant was incompetent to proceed in this case and committed him to a federal medical facility for a period of up to four months of evaluation and treatment including competency restoration to determine whether a substantial probability exists that Defendant can

be restored to competency [Doc. 58 pp. 24, 27–28 (citing 18 U.S.C. § 4241(d)(1))].[1] Defendant self-reported to the Federal Medical Center, Devens ("FMC Devens") in Ayer, Massachusetts, on January 25, 2024, and was evaluated by Dr. Miriam Kissin, Forensic Psychologist, and the staff at FMC Devens from January 25 to May 24, 2024 [Doc. 64 p. 3]. Defendant, who is on conditions of release pending trial, departed FMC Devens on May 24, 2024, and returned to this district [*See* Doc. 60]. Dr. Kissin subsequently provided a Forensic Report to the Court and counsel, which was docketed on June 20, 2024 [Doc. 64, SEALED].

The parties appeared before the undersigned for a status conference and motion hearing on July 10, 2024 [Doc. 66, Minutes]. The Court acknowledged the filing of the Certificate of Competency by Warden F.J. Bowers [Doc. 64 p. 2] and Dr. Kissin's Forensic Report dated June 12, 2024 [*id*. at 3–22].[2] The parties discussed the scope of the 18 U.S.C. § 4142(e) hearing ("the restoration hearing"), and defense counsel requested time for his expert Dr. Malcom Spica[3] to review Dr. Kissin's data[4] and potentially to examine Defendant. The Court set the restoration hearing for September 24, 2024, and asked the parties to brief the scope of the hearing.

---

[1] The Memorandum and Order of July 31, 2023, reviews the procedural history leading up to the Court's finding of incompetence and commitment of Defendant for competency restoration [Doc. 58 pp. 1–2] and summarizes the evidence presented at Defendant's June 22, 2023 competency hearing [*id*. at 5–21].

[2] The Court cites to the page numbers of the collective document, rather than to the internal page numbers in the Forensic Report.

[3] The Court denied Defendant's oral motion to designate Dr. Spica to examine Defendant and possibly testify at the restoration hearing as the Court's witness, finding the relevant statutes do not provide for multiple examiners [Doc. 69]. The Court observed that Defendant could call Dr. Spica as his witness at the restoration hearing [*Id*.].

[4] Although Defendant filed a Motion for Disclosure of Expert Data [Doc. 65], the Government agreed to disclose Dr. Kissin's data, and the Court found the motion to be moot upon the parties' agreement [Doc. 67].

2

On August 12, 2024, the parties filed a Joint Brief Regarding Scope of Hearing Under 18 U.S.C. § 4241(e) [Doc. 70]. They averred that the scope of the restoration hearing "is limited to issues involving the restoration of competency, such as testimony from a medical professional who evaluated a defendant during or after his commitment period . . . and any additional relevant testimony referenced in section 4247(d), including defense witnesses" [*Id.* at 2 (citing *United States v. Helton*, No. 6:21-CR-28-CHB-HAI, 2024 WL 1861033, at *3–4 (E.D. Ky. Apr. 23, 2024), *report & recommendation adopted by* 2024 WL 1857142 (E.D. Ky. Apr. 29, 2024))]. Also, the procedural guarantees of 18 U.S.C. § 4247(d), such as representation by counsel and the opportunity for the defendant to testify, present evidence, subpoena witnesses, and cross-examine the government's witnesses, apply to restoration hearings as well as to competency hearings [*Id.* (citing *United States v. Carr*, No. 12-62-GFVT, 2015 WL 1119481, at *3 (E.D. Ky. Mar. 11, 2015))]. The parties recognized that "[t]he core issue in a section 4241(e) hearing is whether a defendant's competence has been restored to such an extent that he is competent to stand trial" [*Id.* (citing *United States v. Fore*, No. 5:04-cr-124-DCR-MAS, 2022 WL 17980061, at *4 (E.D. Ky. Dec. 8, 2022), *report & recommendation adopted by* 2022 WL 17976786 (E.D. Ky. Dec. 28, 2022); *Carr*, 2015 WL 1119481 at *1, 3)]. The parties agreed that, ultimately, "the Court must determine whether a defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'a rational as well as factual understanding of the proceedings against him'" [*Id.* at 3 (quoting *Dusky v. United States*, 362 U.S. 402, 406 (1960))].

After continuing the restoration hearing several times at the parties' request, the Court held the restoration hearing on January 16, 2025. The Government presented the testimony of Dr. Kissin, who testified remotely by video. The Government introduced Dr. Kissin's curriculum vitae [Exh. 1]. Defendant introduced his medical records from an appointment with Dr. Lauren

McCollum on May 29, 2024 [Exh. 2, SEALED]. After receiving the evidence and arguments of the parties, the Court took the matter under advisement.

## II. EVIDENCE AT RESTORATION HEARING

At the January 16, 2025 restoration hearing, the Government presented the testimony of Dr. Kissin.[5] She testified that she has served as a forensic psychologist at FMC Devens for almost fifteen years and conducted hundreds of forensic evaluations over her career. She stated that the forensic team for Defendant consisted of her, another psychologist, and a psychiatrist. She also gathered outside information on Defendant and his case, reviewed internal observations by other staff, and performed testing and interviews. She stated that when she met with Defendant at his initial intake appointment, Defendant expressed problems with memory and stated that he was diagnosed with dementia. She said that Defendant was first housed in the semi-secure unit which had more support and nursing staff. Dr. Kissin stated that Defendant was moved after a week and a half because he did not need this level of care.

According to Dr. Kissin, Defendant completed the eight competency restoration classes. He was assessed by a psychiatrist, who determined that Defendant did not need any psychiatric treatment or medication. Dr. Kissin stated that Defendant was on medication to slow dementia when he arrived at FMC Devens and that Defendant was continued on that medication. She said the forensic team met with Defendant four times, once monthly. According to Dr. Kissin, Defendant reported having memory problems but was able to answer the team's questions about his history. She stated that Defendant lived on an open mental health unit and was able to go to the

---

[5] While the Forensic Report prepared by Dr. Kissin is filed under seal, she concludes that Defendant's "present competency-related skills are not significantly compromised by symptoms of a serious mental illness or defect such that [Defendant] is unable to understand the nature and consequences of the proceedings against him or to properly assist in his defense" [Doc. 64 p. 21].

4

library, meetings, meals, and be present for prisoner counts on time. She said other inmates reported playing cards and Monopoly with Defendant.

Dr. Kissin stated that because of the question about malingering in Defendant's case, she monitored his telephone calls. She said that although at first Defendant was emotional during calls with his wife and daughter, most of the conversations were about day-to-day events. She said Defendant also gave instructions on how to put money in his commissary fund and was able to recall conversations from earlier calls in subsequent calls. Dr. Kissin said Defendant's actions at the facility, including his telephone conversations, show that he can "function adaptively" to new situations.

Dr. Kissin acknowledged that she reviewed the reports of Dr. Stephen Montgomery and Dr. Sidney Alexander, which Defendant brought with him, but not the report of Dr. Malcom Spica, which was summarized in Dr. Montgomery's report. She stated that she failed to note her review of Dr. Alexander's report in her forensic report. She stated that she had an adequate basis to form an opinion on Defendant's competency given the materials she reviewed, her interviews of Defendant, and her discussions with other individuals in her unit.

Dr. Kissin explained that malingering is feigning symptoms for secondary gain. She stated that she tested Defendant for malingering with the Test of Memory Malingering ("TOMM") and the Validity Indicator Profile ("VIP") tests. She stated that the TOMM tests visual memory by having the individual choose photographs previously shown. Dr. Kissin said this test is designed to allow individuals with severe cognitive issues to do well and a low score shows poor effort. Dr. Kissin said Defendant's score on the TOMM indicated malingering. She said the VIP contains verbal and nonverbal sections and has questions that are easy, intermediate, and hard. According to Dr. Kissin, if an individual misses the easy questions and correctly answers harder questions,

5

they are malingering. Defendant's results on the verbal portion of the VIP were inconsistent, meaning he selected answers randomly, and his results on the nonverbal were "suppressed," meaning he answered harder questions correctly and easier questions incorrectly. She said these results indicate Defendant was malingering.

Dr. Kissin stated that toward the end of the four-month period, she conducted formal interviews with Defendant. Defendant was able to give a "robust" account of his early life, his marriages, and his career. She said when asked about his legal charges, Defendant would first respond that he did not know or give a limited response, but after she reviewed the charging instrument with him, Defendant was able to state his charges in his own words. According to Dr. Kissin, Defendant also understood the Government's evidence and his potential defenses. Dr. Kissin stated that the Certificate of Competency from the Warden is consistent with her findings in her evaluation of Defendant.

On cross-examination, Dr. Kissin testified that during the time that Defendant was at FMC Devens she believed one or two positions in psychological services were unfilled. She said one forensic psychologist was assigned to FMC Devens to assist with the backlog of individuals on a waitlist for evaluations. Dr. Kissin said that she and the other forensic psychologist typically have ten to fifteen cases in the different phases of the restoration process. She agreed that correctional officers are understaffed at FMC Devens, but she was not aware of correctional officers failing to complete their rounds.

Dr. Kissin agreed that neuropsychology is not her area of expertise, but she can administer and interpret neuropsychological tests. She agreed that Drs. McCollum and Rochette diagnosed Defendant with Lewy Body Dementia ("LBD"). Dr. Kissin noted that they found Defendant to have mild dementia but agreed that Dr. Spica found him to have major neurocognitive impairment.

6

She also acknowledged that Dr. Montgomery opined that Defendant may have some cognitive impairment in the form of dementia. She agreed that her report states that Defendant's cognitive functioning may be compromised by a dementing process and explained this means his cognitive ability previously may have been higher. She acknowledged that an individual with cognitive impairment can exaggerate his or her symptoms.

Dr. Kissin said that dementia is a "global process," and she would expect to see evidence of dementia across all cognitive domains, rather than marked defects in some domains and not others. She said Defendant was housed in the semi-secure unit for a brief time but was never housed in the memory unit. She said during his evaluation, Defendant agreed to be housed with convicted inmates, as well as pretrial detainees, and otherwise, he would have had to have been in a lockdown unit the entire time.

Dr. Kissin stated that she conducted one-on-one interviews with Defendant for approximately thirty minutes at intake and for four hours during the formal interviews at the end of the evaluation. Additionally, she attended all four of the monthly team meetings with Defendant, each of which lasted approximately one-half hour. She agreed that Defendant spent six and one-half hours in personal interviews with her. According to Dr. Kissin, Defendant was observed by the forensic intern who conducts the competency classes and by medical, correctional, and mental health staff. She said lists of appointment times are published and the detainees are expected to be at those appointments on time.

Dr. Kissin stated that Defendant cried during telephone conversations with his wife and became emotional, meaning tearful, during his intake interview due to separation from his family. She did not recall other staff reporting that Defendant was emotional, but it could have happened.

Dr. Kissin said it was unusual for Defendant to have brought records with him because mental health records are typically sent by the attorneys in the case. She said Defendant gave these records to the medical staff and she saw them in Defendant's medical chart. Dr. Kissin was not aware that the Court directed Defendant to bring his records with him when he self-reported to the facility. She said she did not discount the records because Defendant hand-carried them to FMC Devens, but she was not aware of them at first.

Defendant referenced records from his May 29, 2024 examination at the Pat Summit Clinic in which Dr. McCollum states that she is aware of Defendant's criminal charges.[6] Dr. Kissin said knowing this would not change her opinion about Defendant's competency.

Dr. Kissin denied that someone with impairment in the visual cognitive domain would perform poorly on the TOMM because performance on that test is usually not affected by most cognitive deficits. She said while dementia could account for a slightly lower score, it would not explain Defendant's significantly low score. Dr. Kissin opined that Defendant's score on the TOMM reveals he was malingering.

Dr. Kissin testified that she did not perform cognitive testing of Defendant's functioning in the various cognitive domains but stated that Defendant "did not present with any kind of gross deficits in those areas." She explained that she did not perform cognitive testing because she did not think it would be valid. She stated that she did not typically use "the more specific neuropsychological instruments," which are typically employed by a neuropsychologist. Dr. Kissin explained that those tests might be used if the individual presented with significant deficits in a specific area. She said that Defendant did not exhibit any deficits that interfered with

---

[6] Following Dr. Kissin's testimony, Defendant introduced the May 29, 2024 records from the Pat Summit Clinic as Exhibit 2, and the Court sealed these records.

8

his day-to-day functioning so she would not necessarily have given those more specific neuropsychological tests. She acknowledged that Defendant's prior diagnosis of dementia implicated cognitive testing, but she stated that she could not explore that diagnosis in a way that would be valid due to Defendant's malingering on the effort testing.

Dr. Kissin stated that during her formal competency interview, Defendant was able to identify information that could contradict each of the allegations in the Indictment. She said she reviewed the charges in the Indictment with Defendant on the first day, and on the second day, they discussed his responses. She said Defendant retained information over a day or two and was able to discuss how his workplace operated and what the expectations of the job were. She said she did not discuss what happened on specific dates in the Indictment with Defendant. Dr. Kissin said that Defendant was able to provide specific information about his job to contradict the allegations in the Indictment.

On redirect examination, Dr. Kissin stated that at the time of Defendant's evaluation, FMC Devens had two forensic psychologists and one a part-time forensic psychologist. She denied that staffing issues affected her ability to evaluate Defendant. She acknowledged that she could have asked for more time to complete the evaluation if she needed more time. She affirmed that if Defendant had memory loss, she would expect to see it across all areas of his life. Dr. Kissin said Defendant was cooperative, polite, and respectful during team meetings and able to participate.

Dr. Kissin stated that during his evaluation, Defendant had to learn his way around the facility and was expected to be places, such as the competency restoration classes, on time. She said Defendant complied with his scheduled requirements.

Defendant introduced the patient visit notes of Dr. Lauren McCollum, a neurologist at the Pat Summitt Clinic, from a follow-up visit with Defendant on May 29, 2024, just four days after

9

he left FMC Devens [Exh. 2, SEALED]. Defense counsel highlighted certain portions of the medical records for the Court's consideration. He pointed out that Dr. McCollum's notes on the visit reveal she was generally advised that Defendant is involved in some legal proceedings in federal court arising out of his former employment, was found incompetent, and ordered to report to FMC Devens for possible competency restoration, and that Defendant weeps freely [*Id*. at 1–2].[7] Counsel also noted that Dr. McCollum opines Defendant has "quite pronounced cognitive impairment that is typical for dementia with Lewy bodies," that he has had "fairly consistent" symptoms over the past two and one-half years, which would be hard to maintain if not legitimate;" and that she has no concerns that Defendant may be malingering [*Id*. at 4]. Counsel pointed out that Dr. McCollum states that Defendant's wife, who accompanies him to most appointments, seems to be a "reliable informant" and her reports of his abilities are consistent with Dr. McCollum's observations [*Id*.].

### III. ANALYSIS

"The test for a defendant's competency to stand trial is 'whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him.'" *Mallet v. United States*, 334 F.3d 491, 494–95 (6th Cir. 2003) (quoting *Dusky*, 362 U.S. at 406). "[T]he burden of proving a defendant who was previously found incompetent is now competent may be allocated to the government." *United States v. Carter*, No. 1:12-CR-29, 2013 WL 6668715, at *11 (E.D. Tenn. Dec. 18, 2013) (citation omitted); *see also Helton*, 2024 WL 1861033, at *3 ("A natural reading [of § 4142(e)] suggests the government bears the burden to establish restoration."

---

[7] The Government argued that portions of what Defendant and his wife told Dr. McCollum contradicted Dr. Kissin's assessment of Defendant at FMC Devens.

(citations omitted)). This allocation furthers the interests of justice by preventing incompetent defendants from proceeding to trial or entering a guilty plea. *Carter*, 2013 WL 6668715, at *12. And the statute provides that the government must demonstrate competence by a preponderance of the evidence. 18 U.S.C. § 4142(e); *Carter*, 2013 WL 6668715, at *12.

Here, Dr. Kissin testified that based upon her review of the expert opinions previously presented, her own interviews and testing of Defendant, and information reported by staff who observed Defendant interacting and navigating FMC Devens for four months, Defendant understands the charges and proceedings. Additionally, Dr. Kissin testified that Defendant has the present ability to confer with his attorney because he was able to list possible defenses and relevant evidence during the formal interview.

At the restoration hearing, defense counsel argued that the Government performed no neurological testing and, as a result, had not refuted the findings of Dr. Spica, upon whose testimony the Court largely relied in finding Defendant incompetent [*See* Doc. 58 pp. 10–13]. But the Court agrees with the Government that Dr. Spica, while a fully qualified clinical neuropsychologist, has no experience in performing forensic competency evaluations. *See Carter*, 2013 WL 6668715, at *13 (giving lesser weight to the opinion of a clinical psychologist, as opposed to the opinions of two forensic psychologists).[8] In contrast, Dr. Kissin has fifteen years of experience at FMC Devens and has performed hundreds of competency evaluations. Moreover, Dr. Kissin spent six and one-half hours formally interviewing Defendant, either alone or as part of the psychology team and had the benefit of four months of observations by medical staff,

---

[8]  The court in *Carter* gave the most weight to the Bureau of Prisons neuropsychologist, observing the other doctors seemed to defer to her opinion. 2013 WL 6668715, at *13. Here, although Dr. Spica is also a neuropsychologist, his lack of experience in forensic evaluations tips the scales toward assigning less weight to his opinions in this case.

11

psychology staff, correctional officers, and even other inmates as Defendant learned to navigate a new facility and schedule. Although Dr. McCollum found Defendant's wife to be "a reliable informant," the staff and other inmates at FMC Devens have no reason to be biased and have no potential secondary gain, whereas Defendant's wife has both springing from the natural care and concern of a spouse.

Finally, the Court finds particularly compelling Dr. Kissin's opinion that Defendant has the demonstrated ability to assist counsel. This opinion is corroborated by her formal competency interview, in which Defendant discusses the strengths and weaknesses of his case, and by her and the staff's observations of Defendant's functional ability.

Based upon a careful review of Defendant's demeanor and behavior, expert opinions regarding competency, the party's arguments, and the record as a whole, the undersigned finds by a preponderance of the evidence that Defendant David Henderson "has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense."[9] 18 U.S.C. § 4241(e); *see also Dusky*, 362 U.S. at 406. In other words, Defendant's "competence has been restored to such an extent that he is competent to stand trial." *Fore*, 2022 WL 17980061, at *4; *Carr*, 2015 WL 1119481, at *5 (finding, under § 4241(e),

---

[9] "A finding of competency does not mean Defendant does not have cognitive deficits." *Carter*, 2013 WL 6668715, at *13. Certain steps could be taken to address any cognitive deficits, such as:
> (1) simplify[ing] the proceedings wherever possible by paraphrasing complex concepts into familiar terms and avoiding legal jargon; (2) slow[ing] down the proceedings and repeat[ing] information as needed, allowing ample time for Defendant to ask and respond to questions; and (3) [taking] breaks in order to provide opportunities for counsel to discuss information and developments with Defendant as needed.

*Id*.

that the defendant had "recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense"). The Court will therefore set this matter for trial and further proceedings. 18 U.S.C. § 4241(e).

## IV. CONCLUSION

Based upon the foregoing, the Court **ORDERS** as follows:

(1) Defendant David Henderson is **COMPETENT** to participate in further proceedings in this case; and

(2) the Court will contact the parties to reset this case for trial and will provide new deadlines in a separate order.

**IT IS SO ORDERED**.

ENTER:

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge