IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:22-CR-14-TAV-JEM |
|  | ) |  |
| DAVID HENDERSON, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**MEMORANDUM OPINION AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on Defendant David Henderson's Motion for Disclosure of the Identity and Location of Eyewitness Participants and Cooperating Individuals [Doc. 12] and Motion for Bill of Particulars [Doc. 18]. The Government filed a response to each motion [Docs. 22 & 23], and the Court held a hearing on the motions [Doc. 28]. Assistant United States Attorney William A. Roach, Jr., and Assistant United States Attorney Frank M. Dale, Jr., appeared on behalf of the Government. Attorney Robert R. Kurtz represented Defendant Henderson. The Court heard the parties' arguments on the motions and took the matter under advisement.[1] For the reasons explained below, the Court **DENIES** the motions [Docs. 12 & 18].

---

[1] While the undersigned had the motions under advisement, Defendant moved for a competency determination, Defendant was evaluated by multiple providers, the Court found Defendant to be incompetent, Defendant received competency restoration, and the Court found Defendant competent to proceed [Doc. 74 pp. 1–4, 13].

I.  BACKGROUND

The Grand Jury for the Eastern District of Tennessee returned an Indictment against Defendant [Doc. 3]. In the Indictment, Defendant is charged with one count of conspiracy to commit federal program fraud, in violation of Title 18, United States Code, Section 371 [*Id*. at 3]. The Government asserts that Defendant was employed by the Knox County Sheriff's Office ("KCSO"), a local governmental agency in Knoxville, Tennessee [*Id*. at 1 (¶¶ 1–2)]. The KCSO was fully funded by the Knox County government's General Fund, three percent of which came from federal grant money, including federal grants for the housing of federal detainees in the Knox County jail under 18 U.S.C. § 4002 [*Id*. (¶ 3)]. The Government asserts that, at all material times, KCSO received more than $10,000 per year in federal grant funds [*Id*. (¶ 4)].

Also, at all times material to the allegations set forth in the Indictment, Defendant was the Chief of the KCSO Narcotics Unit, which is the KCSO's drug-enforcement unit, and had supervisory authority over all KCSO officers who worked in that unit [*Id*. (¶¶ 5–6)]. The Narcotics Unit maintained a cash fund that consisted of money seized by the KCSO in accordance with state law from criminal defendants and/or enterprises [*Id*. at 2 (¶¶ 9–10)]. The purpose of the fund was to purchase equipment and supplies for KCSO operations, such as pole cameras, and to pay confidential informants [*Id*. (¶ 9)]. KCSO officers were authorized to take money from the fund before making an official purchase, or they were authorized to make the purchase first and then seek reimbursement from the fund [*Id*. (¶ 10)]. In either case, the KCSO officer was required to submit a receipt for record-keeping purposes [*Id.*]. At the end of each month, a KCSO officer would reconcile all purchases made with money from the fund and report those purchases to an employee of the KCSO's Finance Department [*Id.*].

2

The Narcotics Unit also maintained a credit card, which was used for covert purposes only [*Id.* (¶ 11)]. To maintain the security and integrity of ongoing non-public investigations, purchases made with the credit card were not disclosed to the public [*Id.*]. The card was kept in a safe within the Narcotic Unit's building, and officers who used the card were required to return it to the safe along with all receipts of purchases [*Id.*].

The Indictment alleges that from "in or around 2011, and continuing uninterrupted to in or about September 2018," Defendant, and other unindicted coconspirators, conspired "to commit an offense against the United States—that is, the theft of federal program funds under 18 U.S.C. § 666(a)(1)(A)—in violation of 18 U.S.C. § 371" [*Id.* at 3]. Generally, the Indictment charges that Defendant and his coconspirators "would unlawfully enrich themselves and others by, among other things: (a) using the Narcotics Unit cash fund to purchase items for their own personal use; (b) using the Narcotics Credit Card to purchase items for their own personal use or benefit or for the personal use or benefit of their family members, associates, or friends; (c) concealing and causing the concealment of purchases made with the Narcotics Cash Fund and the Narcotics Credit Card by submitting expense reports and credit-card statements to the Knox County Finance Department and representing that the purchases were made for official purposes when they knew that the purchases were solely for their personal benefit or the personal benefit of their family members, associates, or friends; (d) depriving Knox County of the right to its employees' time and labor during official hours by directing certain subordinate Narcotics Unit officers to perform renovation, remodeling, and construction projects of a purely personal nature at various locations and for the personal benefit of various individuals, including but not limited to [Defendant]'s private residence, the private residence of the former Knox County Sheriff, and the private residences of family members, associates, and friends" [*Id.* at 3–4].

3

## II. MOTION FOR DISCLOSURE OF THE IDENTITY AND LOCATION OF EYEWITNESS PARTICIPANTS AND COOPERATING INDIVIDUALS [Doc. 12]

Defendant moves the Court for an order directing the Government to furnish his counsel with the names, addresses, and present locations of any individual who was an eyewitness participant to any conduct alleged in the Indictment as well as the identity of any informants, confidential informants, confidential sources, or other cooperating individuals, whether paid or unpaid, who participated in any way in this case or who are material witnesses to any of the events charged in this case [Doc. 12 p. 1]. He further seeks twenty categories of information about these individuals, including for example, whether such individual was suspected, apprehended, or convicted of any crime(s) at any time during which he/she agreed to gather information on behalf of the United States or any other governmental agency; all promises of consideration given to the individual; information to show that any cooperating individual has made contradictory or inconsistent statements relative to this case, any related case, or to Defendant; proffers or statements made by the cooperating individual in this case and any past cases where the individual has cooperated with the government; a summary of any law enforcement agency's informant file; and the cooperating individual's past testimony in this or other cases [*Id.* at 1–4].

Defendant argues that he does not know whether two or more informants assisted the government in this case [Doc. 13 p. 3]. Regardless, he asserts, the discovery "makes clear" that cooperating individuals were "heavily involved in and had extensive participation in the conduct alleged in the Indictment" [*Id.*]. They were assigned to the Knox County Sheriff's Department Narcotics Unit, and they met with Defendant and unindicted coconspirators and participated in the events described in the Indictment [*Id.*]. Defendant says they have firsthand knowledge of the structure, procedures, and protocol in the Narcotics Unit, as well as of the purchases that were made by the Narcotics Unit that are alleged to be improper [*Id.*]. As for the purchases, the

4

informants personally used cash funds and a KCSO credit card to make the allegedly improper purchases [*Id.*]. They also personally participated in the allegedly improper projects and benefitted from allegedly improper work [*Id.*]. Defendant asserts that the alleged conspiracy lasted approximately ninety-three (93) months and most of the evidence will come from these witnesses [*Id.* at 3–4]. Hence, Defendant specifically claims the identities and addresses of the informants would be relevant and helpful to his defense and are essential to a fair determination of this matter [*Id.* at 3].

The United States asks the Court to deny Defendant's request, asserting he has failed to meet his burden to demonstrate that disclosure is essential to a fair trial or how disclosure would substantively assist his defense [Doc. 22 p. 1]. It asserts Defendant argues only in general terms that disclosure of material witnesses would be relevant and helpful to his defense and essential to a fair trial; he does not, according to the Government, explain why or how disclosure is relevant or essential, nor how his defense would be compromised if the United States maintains its privilege not to disclose the identity of the informants [*Id.* at 5]. Instead, it claims Defendant is seeking a pretrial witness list, but the Government is not required to disclose the names of its witnesses before trial [*Id.*]. The United States further claims the allegations in the Indictment are specific and that the United States has produced detailed and comprehensive discovery, which includes numerous interview reports of individuals who participated in many of the alleged overt acts [*Id.* at 1]. Moreover, the United States asserts Defendant is already aware of the identity of coconspirators and witnesses with knowledge of the alleged conduct from the specificity of the overt acts in the Indictment [*Id.* at 3–4].

At the motion hearing, Mr. Kurtz argued that despite the extensive discovery, the identities of eyewitness participants and cooperating individuals linked to the multiple transactions in the

5

Indictment are not clear. He emphasized the importance of identifying eyewitness participants and informants—both those who would testify for the Government and those who would not—to allow him to interview these individuals to prepare for trial. Mr. Kurtz argued that Defendant does not present a danger to potential witnesses. He argued the length of the conspiracy and that the informants and other subordinates were engaged in the same conduct with which Defendant is charged are factors that favor disclosure. Mr. Kurtz directed the Court's attention to paragraph 26 of the Indictment, which contains a chart of twenty-six Apple devices, which Defendant is alleged to have directed coconspirators and subordinates to purchase for their family members and friends [Doc. 3 pp. 13–15 (¶ 26)]. He asserted that although receipts were provided in discovery, the purchasers are not listed on the receipts. He observed that the Indictment lists fifty overt acts and that without disclosure of the identities of the participants, the defense could misidentify a crucial witness. Thus, Mr. Kurtz stated that the Court should order the Government to identify its witnesses at the same time as it discloses Jencks materials and also to disclose eyewitness participants whom it will not call at trial.

AUSA Roach responded that with regard to breaching the informer's privilege, Defendant still fails to show disclosure of the identities of the Government's witnesses and informants is essential to a fair trial. He argued that it is too early for the Court to entertain discretionary disclosure of a witness list or identification of those who would not testify because the Government is still making those determinations. AUSA Roach stated Defendant can discern the identities of potential witnesses from the discovery, which includes numerous interview reports. He argued that the facts are straightforward, the Indictment is detailed, and Defendant is in the best position to identify potential witnesses because he was involved in every overt act. AUSA Roach

6

acknowledged that the receipts provided in discovery do not identify the purchasers but argued the discovery contains sufficient information to allow Defendant to narrow down those involved.

Rule 16 of the Federal Rules of Criminal Procedure governs discovery in criminal cases. Under Sixth Circuit precedent, "[t]he discovery afforded by Federal Rule of Criminal Procedure 16 is limited to the evidence referred to in its express provisions." *United States v. Warshak*, 631 F.3d 266, 275 (6th Cir. 2010) (citing *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988)). This means that, generally, the government is not required to disclose the names of its witnesses before trial. *United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993); *United States v. McCullah*, 745 F.2d 350, 353 (6th Cir. 1984); *see also United States v. Turner*, 91 F. App'x 489, 491 (6th Cir. 2004) (holding that a "defendant in a non-capital case . . . is not entitled to know in advance of trial who will testify for the government").[2] *But see Roviaro v. United States*, 353 U.S. 53, 60–64 (1957) (holding that the informer's privilege does not prevent the disclosure of the identity of active participants in the crime).

Here, Defendant seeks disclosure of the identities of two categories of potential witnesses: (1) informants and eyewitness participants, who are individuals—primarily Defendant's subordinates at the Knox County Sheriff's Department—who also participated in the alleged overt acts and (2) other individuals referenced in the Indictment, who are primarily the beneficiaries of Apple devices listed in paragraph 26. Defendant requests disclosure of these individuals whether

---

[2] This general rule is tempered by the Government's obligation under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), to provide a defendant with information that is favorable to his defense and material to either guilt or punishment. The government "acts at its own peril" if it fails to provide *Brady* materials in a timely fashion. *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988).

7

or not the Government plans to call them at trial but acknowledges that the Jencks Act controls the timing of identification of those who will testify. The Court examines both categories in turn.

### A. Informants and Eyewitness Participants

Defendant requests a list of any confidential informants, confidential sources, or other cooperating individuals, whether paid or unpaid, and any eyewitness participants, who participated in any way in this case or who are material witnesses to any of the charged events. With respect to informants specifically, the Supreme Court has stated that the Government possesses a limited privilege to "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro*, 353 U.S. at 59. "Where the disclosure of an informer's identity, or of the contents of his communications, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, [however,] the privilege must give way." *Id.* at 60–61.

In deciding whether a confidential informant's identity should be disclosed, "trial courts must balance the public's interest in protecting the flow of information against the defendant's right to prepare a defense." *United States v. Beals*, 698 F.3d 248, 270 (6th Cir. 2012). Courts should also consider the "particular circumstances of each case," such as "the crime charged, the possible defenses, [and] the possible significance of the informer's testimony[.]" *Id.* (alterations in original) (quoting *Roviaro*, 353 U.S. at 62). Generally, disclosure is required when the informant is an "active participant in the events underlying the defendant's potential criminal liability" and not required when the informant is a "mere tipster or introducer." *United States v. Sharp*, 778 F.2d 1182, 1186 n.5 (6th Cir. 1985) The Court also considers whether the defendant presents a danger to the informant. *United States v. Jackson*, 990 F.2d 251, 255 (6th Cir. 1993). "'An informant must be disclosed only upon a showing by the defendant that disclosure is essential to a

8

fair trial.'" *United States v. Dexta*, 136 F. App'x 895, 904 (6th Cir. 2005) (quoting *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992)). And Defendant "bears the burden of showing how disclosure of the informant's identity would substantively assist his defense." *Id*.

While "the cooperating individuals were heavily involved in and had extensive participation in the conduct alleged in the Indictment" [Doc. 13 p. 3], Defendant fails to "show how disclosure of [] informant[s] would substantively assist his defense." *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992); *see also United States v. Ray*, 803 F.3d 244, 274 (6th Cir. 2015) ("A defendant must provide some evidence that disclosure of the informant's identity would assist in his defense before disclosure will be warranted."); *United States v. Sierra-Villegas*, 774 F.3d 1093, 1109 (6th Cir. 2014) ("[A]n in camera hearing is not required when the defendant fails to identify how the informant's testimony could be relevant or helpful."). He does not identify "the likelihood that [an informant] possesses necessary information for the defendant's sole defense" or present more than a general statement about the need to effectively prepare for trial. *See United States v. Shanklin*, 924 F.3d 905, 915 (6th Cir. 2019) (noting that, "[a]dmittedly, our precedent has not specified what kind of evidence (and what amount) a defendant is required to produce before he successfully requests disclosure"). "A defendant must provide some evidence that disclosure of the informant's identity would assist in his defense before disclosure will be warranted," *Ray*, 803 F.3d at 274, and "[m]ere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure," *Sharp*, 778 F.2d at 1187 (internal quotation marks omitted).

Defendant argues only that he wants to confirm that he has correctly identified all the eyewitness participants so he can be sure that he has interviewed all those who took part in the alleged overt acts. Defendant does not identify what information these individuals possess that

9

would be helpful to his defense. At the motion hearing, Defendant compared this case to *United States v. Higdon*, 68 F. Supp. 3d 807, 815–16 (E.D. Tenn. 2014), where the court granted disclosure of informants or eyewitnesses who participated in drug transactions or obtained precursor materials. There, the lengthy conspiracy (six years), the lack of danger to the informants, and the absence of other information[3] permitting the defendant to identify unindicted members of the alleged conspiracy tipped the balance in favor of disclosure. *Id*. Defendant is also charged with a lengthy conspiracy, and the Court has no information that he presents a danger to his former subordinates or other eyewitness participants. Unlike in *Higdon*, however, Defendant has information from discovery (summaries of interviews, receipts, financial documents, and photographs) that both identifies the eyewitness participants and explains the overt acts. Thus, Defendant has not demonstrated a need to breach the informer's privilege in this case.

### B. Unidentified Purchasers and Beneficiaries

Defendant also asks the Court to exercise its discretion to require the Government to identify unknown individuals in the Indictment. This request appears to primarily related to the transactions listed in paragraph 26. The Court has discretion to order the Government to produce discovery not required by Federal Rule of Criminal Procedure 16, including a witness or exhibit list, pursuant to its inherent powers. *United States v. Kendricks*, 623 F.2d 1165, 1168 (6th Cir. 1980) (holding that the district court has the discretion to order the prosecution to produce a witness list); *Presser*, 844 F.2d at 1285 n.12 (observing that "a trial court may have some inherent power to enter specific orders compelling the disclosure of specific evidence when justice requires

---

[3]     In *Higdon*, defense counsel acknowledged access to the plea agreements of codefendants but stated the plea agreements only "generally implicated Defendant Higdon." 68 F. Supp. 3d at 815. Defense counsel averred the cooperating codefendants declined to be interviewed on the details of the conspiracy. *Id*.

10

it"). "As a general matter, courts weigh the interests of a defendant in receiving the witness list against the government's countervailing interest in keeping the witness information undisclosed." *United States v. Powell*, No. 12–20246, 2012 WL 6096600, at *6 (E.D. Mich. Dec. 7, 2012). The following factors are relevant to this assessment:

> (i) whether disclosure of the witness list would expedite trial and facilitate docket control; (ii) whether disclosure would cause a security issue for the government witnesses; (iii) the amount of time the defendant already had to research potential witnesses and prepare for investigation; and (iv) whether the government previously turned over information with the identities of government witnesses.

*Id*. (citations omitted).

To the extent Defendant requests a witness list of any individual who is referenced in the transactions or events described in the Indictment, Defendant again fails to establish the need for such disclosure. Disclosure of a witness list at this time may serve to expedite the trial, but the Court's Order on Discovery and Scheduling [Doc. 8 ¶ O] encourages the Government to disclose Jencks Act materials pretrial to avoid undue trial interruptions. Moreover, Defendant acknowledges that the Jencks Act controls the timing of disclosure with regard to the Government's witnesses. As for whether disclosure would cause a security issue for Government witnesses, the Government does not assert any potential security issues if the names of witnesses are released. Finally, with respect to the amount of time Defendant has had to research potential witnesses and prepare for investigation and whether the Government has previously turned over information with the identities of Government witnesses, these factors weigh against provision of a witness list here. The Indictment is detailed; it sets forth over fifty overt acts alleged to have been made in furtherance of the conspiracy [Doc. 3]. The allegations disclose specific purchases, including dates, made by coconspirators at Defendant's direction; specific construction and renovation projects, including dates, performed by coconspirators at Defendant's direction; and

11

specific antique vehicles that Defendant and others restored in the Blue Building [*See, e.g.*, Doc. 3, pp. 13–15 (¶ 26) (Apple Products); *id.* at 15–16 (¶¶ 27–33) (Restoration of Antique Vehicles); *id.* at 16–18 (¶¶ 34–42) (Construction and Renovation Projects)]. The Government has described in detail the dates of purchases of more than fifty items, the method of payment, the exact price of the items, and generally described the beneficiary of the purchases [*Id.* at 8–11 (¶¶ 2–21), 13–15 (¶ 26)].[4] Likewise, the Indictment includes specific allegations about a duck blind, a structure allegedly built by Defendant's subordinates—at Defendant's direction—during their official duty [*Id.* at 12 (¶ 23)]. The Indictment alleges that Defendant also instructed subordinates to use money from the Cash Fund or the Narcotics Credit Card to purchase several items to finish, outfit, and accessorize the duck blind [*Id.* at 12–13 (¶ 24(a)–(f))]. The Indictment further alleges that Defendant coordinated many of the construction and renovation projects himself—or directly benefited from them [*See, e.g.*, *id.* at 17 (¶ 37)]. Even more, however, the Government asserts it has produced detailed and comprehensive discovery that includes numerous interview reports of individuals who participated in many of the alleged overt acts [Doc. 22 p. 1]. Hence, Defendant has information in his possession that will allow him to research potential witnesses and prepare for investigation, and he has provided the Court with no information to suggest otherwise. Considering all of this, the factors weigh against requiring the Government to provide an early witness list. *See United States v. Newman*, No. 3:19-CR-59-TAV-DCP, 2020 WL 7294644, at *3–4 (E.D. Tenn. Dec. 10, 2020) (declining to order an early witness list

---

[4] For example, the Indictment alleges that Defendant directed a subordinate to use the Narcotics Credit Card to purchase twenty-six Apple products between May 2, 2011, and July 25, 2018. [*See* Doc. 3 pp. 13–15 (¶ 26) (including a chart that lists twenty-six Apple devices, the date of purchase, the make and model of the Apple device, the price, the date the device was first registered, and a general description of who first registered the device)].

12

Case 3:22-cr-00014-TAV-JEM   Document 77   Filed 05/16/25   Page 12 of 19
PageID #: 1000

where the defendant "already knows the names of potential Government witnesses who were either patients of or employed by the pain clinic at issue").

For all these reasons, the Court **DENIES** Defendant's Motion for Disclosure of the Identity and Location of Eyewitness Participants and Cooperating Individuals [**Doc. 12**].

### III. MOTION FOR BILL OF PARTICULARS [Doc. 18]

Defendant moves the Court to order the United States to file a bill of particulars specifying certain matters that he submits "are essential to the full preparation of his defense to the charges contained in the [I]ndictment, to prevent or minimize the element of surprise at trial, and to define the crime sufficiently to protect him against subsequent prosecution for the same offense [Doc. 18 p. 1]. Specifically, he requests the Government identify the following in a bill of particulars:

1. . . . the $5,000.00 or more worth of property alleged to have been stolen, or otherwise misappropriated as it relates to count one of the Indictment;

2. . . . the twelve-month time period(s) in which the theft of $5,000.00 or more worth of property occurred; and

3. . . . the unindicted co-conspirator(s) alleged in count one of the Indictment as it relates to the [theft of property].

[*Id.* at 2].

In support of this request, Defendant relies upon *United States v. Valentine*, 63 F.3d 459 (6th Cir. 1995), to assert that the Government must allege that property valued at $5,000.00 or more was stolen or otherwise misappropriated in any twelve-month period [Doc. 19 p. 3]. He seeks a bill of particulars because the Indictment does not allege that $5,000.00 or more worth of property was stolen or otherwise misappropriated in a specific twelve-month period [*Id.*]. He claims he needs this information because the failure to allege this essential element makes it impossible for him to defend against the charges because he has no way to determine which property, valued at $5,000.00 or more, was stolen or otherwise misappropriated during a specific

13

twelve-month period, in which twelve-month period the Government alleges the property was taken, nor whether the Indictment alleges multiple unconnected conspiracies with different individuals or a conspiracy continuing over time with the same individuals [*Id.* at 4–5].

The United States opposes Defendant's request [Doc. 23]. It asserts that the allegations contained in the Indictment are specific and that the United States has produced comprehensive discovery in an organized format [*Id.* at 7, 10–11]. Most of his assertions, the Government submits, stem from his position that the United States is required to prove each element of the substantive offense of federal program fraud [*Id.*]. But the United States claims it is not required to prove those elements; rather, it is required to prove only the elements of the charged offense of conspiracy [*Id.* at 7–8]. As for the unindicted coconspirators, the United States submits that Defendant is not entitled to that information under Sixth Circuit law, but regardless, the specificity of the Indictment discloses specific purchases, and dates of purchase, made by coconspirators at Defendant's direction, specific construction and renovation projects, and dates of those projects, performed by coconspirators at Defendant's direction, and specific antique vehicles that Defendant and others restored in the Blue Building [*Id.* at 9–10]. Further, it explains that the discovery produced to Defendant "includes additional information about the purchases [D]efendant directed, including receipts for items and statements made by individuals with knowledge of the purchases[;]" "information about the construction and renovations projects, including timestamped photographs depicting the individuals who performed the projects and benefited from them[;]" and "statements from individuals who were interviewed during the investigation and who have knowledge of the purchases, the construction and renovation projects (including the Duck Blind), and the restoration of the antique cars in a Knox-County-owned facility" [*Id.* at 10].

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001). An indictment may allege the charges using the words of the statute itself as long as it gives all the elements of the offense "fully, directly, and expressly[.]" *Hamling*, 418 U.S. at 117 (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)); *Landham*, 251 F.3d at 1079. The statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Hamling*, 418 U.S. at 117–18 (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)); *Landham*, 251 F.3d at 1079.

Federal Rule of Criminal Procedure 7(f) provides that "[t]he court may direct the government to file a bill of particulars" and that "[t]he government may amend a bill of particulars subject to such conditions as justice requires." "A bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes. It is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993). The granting of a bill of particulars is within the court's discretion. *See id.* The level of detail in the indictment can be a basis for denying the motion for a bill of particulars. *Id.* In addition, "'a defendant is not entitled to a bill of particulars with respect to information which is available through other sources.'" *United States v. Higdon*,

15

Case 3:22-cr-00014-TAV-JEM    Document 77    Filed 05/16/25    Page 15 of 19
PageID #: 1003

68 F. Supp. 3d 807, 811 (E.D. Tenn. 2014) (quoting *United States v. Paulino*, 935 F.2d 739, 750 (6th Cir. 1991), *superseded on other gnds by statute*, *United States v. Caseslorente*, 220 F.3d 727 (6th Cir. 2000)).

To the extent Defendant seeks a bill of particulars to identify the $5,000.00 or more worth of property alleged to have been stolen, or otherwise misappropriated as it relates to count one of the Indictment and the twelve-month period(s) in which the theft of $5,000.00 or more worth of property occurred, the Court addressed this issue and recommended to the District Judge that the information sought by Defendant is not an element of the offense of conspiracy under 18 U.S.C. § 371 [Doc. 30 pp. 6–10]. He accepted and adopted this recommendation in whole, finding that the Government "was not required to allege all of the elements of a violation of § 666(a)(1)(A)" to include that $5,000 of property was stolen in any one year [Doc. 37 pp. 1, 12–17].

Given the nature of the conspiracy charge, the Indictment is sufficiently specific to inform Defendant of the nature of the charge he faces and to permit him to prepare for trial. From the face of the Indictment, one can understand that Defendant is charged with conspiracy to commit federal program fraud, in violation of 18 U.S.C. § 371 [Doc. 3]. The elements required to prove a conspiracy to commit federal program fraud, in violation of 18 U.S.C. § 371, include that (i) the defendant knowingly and willingly joined the conspiracy, (ii) the purpose of which was to steal federal program funds, in violation of 18 U.S.C. § 666(a)(1)(A), and (iii) a member of the conspiracy took an overt act in furtherance of the conspiracy. *United States v. Washington*, 715 F.3d 975, 979-80 (6th Cir. 2013). The Indictment alleges, with specificity, that a conspiracy existed; that Defendant knowingly and willingly joined the conspiracy; that the purpose of the conspiracy was to steal federal program funds to unjustly enrich Defendant and others; and that Defendant himself committed more than fifty overt acts in furtherance of the conspiracy

[*See generally* Doc. 3]. The overt acts are described in detail, including the dates of purchases, the method of payment, the exact price of the items purchased, and the beneficiary of the purchase. [*Id.* at 7–18 (¶¶ 1–42)].

The Indictment alleges that the object of the conspiracy was for Defendant to use his authority as Chief of the KCSO Narcotics Unit to enrich himself and others by, among other things, directing his subordinates to use Knox County funds—money from the Narcotics Cash Fund and the Narcotics Credit Card—to purchase items for Defendant's personal use or for the personal use of Defendant's family members, associates, and friends, and for the former Knox County Sheriff [*Id*. at 3]. The Indictment describes in detail how the conspiracy worked [*See generally id.* at 4–7 (¶¶ 1–15)];[5] it includes specific details about purchases made with Knox County funds;[6] it includes specific allegations about the Duck Blind, a structure allegedly built by Defendant's subordinates—at Defendant's direction—while the subordinates were allegedly on official duty [*id.* at 11–13 (¶¶ 22–25)];[7] and it includes specific allegations surrounding Defendant's use of a

---

[5] The Manner and Means section of the Indictment includes, among other things, allegations regarding the duration of the conspiracy [Doc. 3 p. 4 (¶ 2)]; how Defendant exercised his authority over subordinate officers [*id.* (¶ 3)]; how Defendant caused receipts for purchases to be submitted to the Knox County Finance Department for approval [*id.* at 5 (¶ 6)]; and how Defendant concealed the conspiracy by not personally using the credit card, but instead instructing subordinates to use the card to purchase items for Defendant's personal benefit or the personal benefit of Defendant's family members, associates, and friends, and the former Knox County Sheriff [*id.* (¶ 7)].

[6] Specifically, the Indictment alleges that Defendant directed subordinates to use money from the Cash Fund to purchase items for Defendant's personal use or for the personal use of Defendant's family members, associates, and friends, and for the former Knox County Sheriff [Doc. 3 pp. 8–11 (¶¶ 2–21)], and that Defendant instructed his subordinates to use the credit card to purchase twenty-six Apple products for his personal use and for the personal use of others [*id.* at 13–15 (¶ 26)]. In total, the Indictment alleges that Defendant directed subordinates to purchase more than fifty items with either money from the Cash Fund or the credit card [*See, e.g.*, *id.* at 7–11 (¶¶ 2–11); 13–15 (¶ 26)].

[7] Specifically, the Indictment alleges that Defendant instructed his subordinates to use money from the Cash Fund or the credit card to purchase several items to finish, outfit, and accessorize the Duck Blind [*Id.* at 12–13 (¶ 24(a)–(f))]. The Government sets forth each purchase

17

Knox-County-owned facility to restore antique vehicles during the workday [*id.* at 15–16 (¶¶ 27–33)].[8]

As for his request that the United States identify unindicted coconspirator(s), "the Sixth Circuit has held the government is not required to furnish in a bill of particulars the names of co-conspirators or other persons present when a defendant allegedly participated in a conspiracy." *United States v. Assad*, No. 2:18-CR-140, 2019 WL 4054988, at *3 (E.D. Tenn. Aug. 27, 2019) (citation omitted); *see also United States v. Page*, 575 F. App'x 641, 643 (6th Cir. 2014) (noting "[a]s an initial point, the government is not obliged to provide the names of a defendant's alleged co-conspirators"); *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) ("[T]he government is not required to furnish the names of all other co-conspirators in a bill of particulars."); *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991) (affirming the denial of motion for bill of particulars where the defendants requested names of co-conspirators because "it is not essential that a conspirator know all other conspirators"); *United States v. Hofstetter*, No. 3:15-CR-27-TAV-CCS, 2018 WL 813254, at *7 (E.D. Tenn. Feb. 9, 2018) ("Thus, the Government is not required to reveal the names of unindicted coconspirators." (citing *Crayton*, 357 F.3d at 568)).

---

in detail, providing the source of the funds for the purchase, the specific date of the purchase, where the item was purchased, and the exact price of the item [*See, e.g.*, *id.*].

[8] Specifically, the Indictment alleges that Defendant and "several of his subordinates—often at [Defendant]'s request—worked on [Defendant]'s cars during the workday and late into the evenings" [*Id.* at 15 (¶ 29)]. In the Indictment, the Government identifies the make and model of each antique car Defendant and others allegedly restored in the Knox-County-owned facility and the related items Defendant instructed a subordinate to purchase with the credit card [*Id.*]. Further, the Government sets forth detailed allegations about the purchases, including the source of funds, the items purchased, the date of the purchases, and the exact price of the items purchased [*Id.* at 15–16 (¶¶ 31–33)].

Nonetheless, the Indictment here is very detailed and the Government submits that it has produced well-organized and comprehensive discovery to Defendant [Doc. 23 p. 10]. That discovery includes statements made by individuals with knowledge of the relevant purchases, projects, and restoration of antique cars and photos depicting individuals who worked on the projects identified in the Indictment [*See id*. at 11]. "[T]he [I]ndictment—coupled with discovery materials—adequately notifie[s Defendant] of the case against him and provide[s] him ample opportunity to prepare a defense." *United States v. Tillotson*, 490 F. App'x 775, 777 (6th Cir. 2012); *see also Page*, 575 F. App'x. at 643 (explaining that "full access to discovery further weakens the case for a bill of particulars" (cleaned up)); *United States v. Readus*, No. 3:09-00240, 2013 WL 3285052, at *2 (M.D. Tenn., June 28, 2013) (noting government's argument that it provided "significant amounts of information in discovery and Jencks material" in decision to deny defendant's motion for bill of particulars).

For all of these reasons, the Court **DENIES** Defendant's Motion for a Bill of Particulars [**Doc. 18**].

## IV. CONCLUSION

For the reasons explained above, the Court **DENIES** Defendant's Motion for Disclosure of the Identity and Location of Eyewitness Participants and Cooperating Individuals [**Doc. 12**] and Defendant's Motion for a Bill of Particulars [**Doc. 18**].

**IT IS SO ORDERED**.

ENTER:

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge