UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:22-cr-14 |
| v. | ) | |
| | ) | JUDGE VARLAN |
| DAVID HENDERSON | ) | |

## **PLEA AGREEMENT**

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, DAVID HENDERSON, and the defendant's attorney, Robert R. Kurtz, have agreed upon the following:

1.     The defendant will plead guilty to the following count in the indictment:

a)     **Count One**.  Conspiracy to commit federal program fraud, in violation of 18 U.S.C. § 371.

The punishment for this offense is not more than five years' imprisonment, not more than three years of supervised release, a fine of not more than $250,000, a mandatory special assessment of $100, forfeiture, and restitution.

2.     There are no remaining counts in the indictment.  The United States agrees not to further prosecute the defendant in the Eastern District of Tennessee for any other non-tax criminal offenses committed by the defendant that are related to the charges contained in the indictment in this case and that are known to the United States Attorney's Office for the Eastern District of Tennessee at the time this plea agreement is signed by both parties.

3.     The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime charged.  Specifically, the elements of the offense are as follows:

a)   Two or more persons conspired or agreed to commit the crime of theft of federal program funds, in violation of 18 U.S.C. § 666(a)(1)(A).

b)   Defendant knew of the conspiracy and its goals.

c)   Defendant joined the conspiracy with the intent that at least one of the conspirators engage in conduct that satisfies the elements of theft of federal program funds, in violation of 18 U.S.C. § 666(a)(1)(A).

d)   A member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

4.   In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

At all times relevant to the Indictment:

a)   The defendant, David Henderson, resided in the Eastern District of Tennessee and was employed by the Knox County Sheriff's Office ("KCSO").

b)   The KCSO was a local government agency located in Knoxville, Tennessee, in the Eastern District of Tennessee, and fully funded by the Knox County government's General Fund. Three percent of the Knox County General Fund revenue comes from federal grant money, including federal grants for the housing of federal detainees in the Knox County jail under the provisions set forth in 18 U.S.C. § 4002.

c)   As an agency of the Knox County government, the KCSO received more than $10,000 per year in federal grant funds.

2

d) From in or around 2011 and continuing uninterrupted to in or around September 2018, the defendant was the Chief of the KCSO Narcotics Unit ("Narcotics Unit"). In that role, the defendant had supervisory authority over all KCSO officers who worked in the Narcotics Unit.

e) Beginning in or around 2011 and continuing to in or around September 2018, the defendant's only superior within the KCSO was the former Knox County Sheriff.

f) Beginning in or around 2011 and continuing to in or around September 2018, defendant conspired and agreed with other unindicted coconspirators to steal federal program funds, in violation of 18 U.S.C. § 666(a)(1)(A), and to use those funds to make purchases for their own personal use.

**Narcotics Unit Cash Fund**

g) The Narcotics Unit maintained a cash fund ("Narcotics Cash Fund" or "Fund") that consisted of seized funds—that is, money seized by the KCSO in accordance with state law from criminal defendants or criminal enterprises. The purpose of the Fund was to purchase equipment and supplies for KCSO operations. For example, money from the Fund was used to purchase pole cameras to conduct surveillance and to pay confidential informants.

h) KCSO officers were authorized to take money from the Fund before making an official purchase, or they were authorized to make the purchase first and then seek reimbursement from the Fund. In either case, the KCSO officer was required to submit a receipt for record-keeping purposes. At the end of each month, a KCSO officer would reconcile all purchases made with money from the Fund and report those purchases to an employee in the KCSO's Finance Department.

3

**Narcotics Unit Credit Card**

i)      The Narcotics Unit also maintained a credit card ("Narcotics Unit Credit Card" or "Card"), which was assigned to the Narcotics Unit by the Knox County government.  The Card was to be used for covert purposes only, including the purchase of surveillance equipment for ongoing non-public investigations.  To maintain the security and integrity of ongoing public investigations, purchases made with the Card were not disclosed to the public.  The Card was kept in a safe in the Narcotics Unit's building.  KCSO officers who used the Card were required to return it to the safe along with all receipts of purchases.

j)      The defendant controlled the Narcotics Cash Fund and the use of the Narcotics Credit Card, and he authorized certain subordinate officers to make purchases using the Card and cash from the Fund.

k)      Defendant and his coconspirators made purchases using the Card and cash from the Fund for their personal use and benefit and for the benefit of their family members, associates, and friends.  Defendant directed one or more subordinate officers to use the Card and cash from the Fund on several occasions to purchase items for the defendant's personal use and for the personal use of certain of the defendant's colleagues, including the former Knox County Sheriff.

l)      To conceal the conspiracy, the defendant did not personally use the Card; instead, he directed subordinate officers to use the Card to make purchases for the defendant.

m)      For example, the defendant directed subordinate officers to use the Card to purchase various Apple products, which defendant gave to subordinate officers who followed his mandates regarding various construction, remodeling, and renovation projects at the defendant's residence and the residences of the defendant's family members, associates, and friends.

4

n)      At times, the defendant instructed a subordinate officer to use the Card to purchase new Apple products and distribute those products directly to the defendant's family members, associates, or friends.  These products were never used by a KCSO officer.

o)      When the defendant received a new Apple product purchased with the Card, he gave his older Apple products to friends, family members, and associates as gifts.  The defendant also permitted his chosen subordinate officers to give their old Apple products to family members, friends, and associates, as gifts.

p)      The defendant authorized and approved every purchase of an Apple product made with the Card.  No purchases of Apple products were made with the Card without the defendant's express approval.

q)      During the conspiracy period as alleged in the indictment, the Card was used at the defendant's direction to purchase approximately $138,000 worth of Apple products.

r)      The defendant caused receipts of the purchases made with the Card and with cash from the Fund to be submitted to the KCSO Finance Department claiming that such purchases were for official use when, in fact, the defendant and his coconspirators knew that the purchases were for their personal benefit or the personal benefit of their family members, associates, and friends.

s)      As Chief of the Narcotics Unit, the defendant controlled the work schedules of all the officers in the Narcotics Unit.  Defendant exercised his authority over his subordinate officers by instructing them to perform renovation, remodeling, construction, and other manual-labor-type projects ("non-KCSO projects") during the workday at the defendant's personal residence, the residence of the former Knox County Sheriff, the personal residences of chosen

5

subordinate Narcotics Unit officers, and at the personal residences of the defendant's family members and associates.

t)      The defendant directed his subordinate officers to perform non-KCSO projects while they were on official duty.  Many of the projects were completed at the defendant's direction and supervised by the defendant's chosen subordinate officers who were skilled in construction-type work.  These projects were done for the defendant's personal benefit; the personal benefit of the defendant's family, friends, and associates; the personal benefit of chosen subordinate officers; and the personal benefit of the former Knox County Sheriff.

u)      In several instances, these non-KCSO projects took multiple days to complete, and on many occasions, the defendant directed his subordinates to purchase supplies for these projects using cash from the Fund or the Card and to use KCSO-owned vehicles, supplies, and machinery to complete the projects.

**Overt Acts**

v)      Defendant instructed subordinate officers to use cash from the Fund or the Card to make the following purchases for the defendant's personal use, the personal use of the former Knox County Sheriff, or the personal use of defendant's family, friends, and associates:

| Approximate Date of Purchase | Payment Method / Amount | Item Purchased | Beneficiary |
|---|---|---|---|
| January 30, 2012 | Card / $1,400 | Nuvico security cameras | Defendant's friends |
| May 4, 2012 | Card / $173.33 | Nuvico security camera | Defendant's friend |
| May 8, 2012 | Fund / $510.74 | camo tactical optic rifle scope | former Knox County Sheriff |
| September 2012 | Fund / unknown | camera system | Defendant's family member |

6

| | | | |
|---|---|---|---|
| November 19, 2012 | Fund / unknown | camera system | Defendant's family member |
| November 1, 2013 | Card / $1,299.98 | two Yeti coolers | Defendant |
| July 2, 2014 | Card / $6,000 | two EO Tech thermal imagers | Defendant (1) and the former Knox County Sheriff (1) |
| August 7, 2014 | Card / $191.40 | herbicide | Defendant |
| February 11, 2015 | Fund / $206.48 | Kobalt tile saw | Defendant |
| March 30, 2015 | Card / $379.99 | Yeti Tundra cooler | Defendant |
| June 23, 2015 | Card / $2,199.98 | Google Nest security camera system | friend of subordinate officer |
| April 14, 2016 | Fund / $74.99 | tactical rifle case | Defendant |
| May 2, 2016 | Fund / $210.77 | two AR-15 speed loader magazines | Defendant |
| May 2, 2016 | Fund / $100.77 | two magazine loaders | Defendant |
| February 7, 2017 | Card / $1,010.89 | Dewalt framing items | Defendant |
| September 12, 2017 | Fund / $41.46 | Marine extinguishers and camo spray paint | former Knox County Sheriff (for his duck-hunting boat) |
| September 21, 2017 | Fund / $29.49 | post hole digger | former Knox County Sheriff (for his personal residence) |
| October 27, 2017 | Fund / $21.84 | industrial boat mat | former Knox County Sheriff (for his duck-hunting boat) |
| September 17, 2018 | Card / $459.98 | two La-Z-Boy leather executive chairs | Defendant and his associates |

Case 3:22-cr-00014-TAV-JEM    Document 80    Filed 08/22/25    Page 7 of 20    PageID #: 1020

**The Duck Blind**

w)      Sometime around September or October 2017, the defendant directed several subordinate officers to construct a duck blind on private property for the personal benefit of the former Knox County Sheriff.

x)      The defendant tasked a subordinate who was skilled in construction and renovation to design plans for the duck blind, and he tasked several other subordinates with constructing the duck blind.

y)      Construction of the duck blind was completed sometime before November 2017 and was performed by subordinate officers who were on official duty during the construction.

z)      After construction of the duck blind was completed, the defendant directed a subordinate to build a post into the riverbank next to the duck blind to hold duck decoys as the decoys spun in the water.

aa)     After construction of the duck blind was completed, and at defendant's direction, the following purchases were made with the Card and cash from the Fund to finish, outfit, and accessorize the duck blind.

| Approximate Date of Purchase | Payment Method / Amount | Item Purchased | Beneficiary |
|---|---|---|---|
| November 2, 2017 | Card / $670.15 | sprayer extension, paint, paint brushes, drop cloth, and various other items | former Knox County Sheriff |
| November 10, 2017 | Fund / $27.29 | puck lights | former Knox County Sheriff |
| November 27, 2017 | Card / $114.59 | various items at Lowe's | former Knox County Sheriff |
| November 29, 2017 | Card / $115.49 | various items at Lowe's | former Knox County Sheriff |

8

| | | | |
|---|---|---|---|
| December 3, 2017 | Fund / $44.29 | steel tube, chain swagging tool, ferrule stop kit for duck decoys | former Knox County Sheriff |
| December 4, 2017 | Fund / $21.31 | aluminum duplex sleeves for duck decoys | former Knox County Sheriff |

**Apple Products**

bb)    The defendant directed or permitted various coconspirators and subordinates to use the Card to purchase the following Apple products for the defendant's family members, associates, and friends, and for their own family members, associates, and friends:

| Approximate Date of Purchase | Apple Product and Approximate Purchase Price | First Registration or Use Date | Registered User or First User |
|---|---|---|---|
| May 2, 2011 | iPad Wi-Fi 3G 64GB ($829) | May 3, 2011 | subordinate officer's family |
| May 6, 2011 | iPad Wi-Fi 3G 64GB ($829) | May 6, 2011 | wife of KCSO employee |
| June 17, 2011 | iPad Wi-Fi 3G 64BG ($829) | June 18, 2011 | Defendant's family member |
| Oct. 5, 2011 | iPad 2 Wi-Fi 3G 64BG ($829) | Oct. 5, 2011 | Defendant's friend |
| Mar. 16, 2012 | iPad Wi-Fi 4G 64BG ($829) | Mar. 20, 2012 | Defendant's friend |
| Aug. 9, 2013 | iPad Wi-Fi Cell. 64GB ($812) | Aug. 13, 2013 | Defendant's friend |
| Aug. 29, 2013 | iPad Wi-Fi Cell. 16GB ($616) | Sept. 5, 2013 | KCSO employee's family |
| Sept. 19, 2013 | iPad Wi-Fi Cell. 32GB ($714) | Sept. 21, 2013 | subordinate officer's wife |
| Nov. 1, 2013 | iPad Mini Wi-Fi Cell. 64GB ($623) | Nov. 7, 2013 | KCSO employee's wife |
| Nov. 8, 2013 | iPad Wi-Fi Cell. 64GB ($812) | Nov. 9, 2013 | Defendant's friend |
| Dec. 9, 2013 | iPad Wi-Fi Cell. 64GB ($812) | Dec. 23, 2013 | Defendant's friend |
| Dec. 30, 2013 | iPad Wi-Fi Cell. 32GB ($714) | Jan. 11, 2014 | Defendant's friend |
| Feb. 3, 2015 | iPad Wi-Fi Cell. 64GB ($714) | Feb. 3, 2015 | Defendant's friend |

9

| Mar. 13, 2015 | iPad Mini Wi-Fi Cell. 64 GB ($616) | Mar. 13, 2015 | KCSO employee's family |
|---|---|---|---|
| Nov. 25, 2015 | iPad Pro Wi-Fi Cell. 128GB ($1,057) | Nov. 25, 2015 | Defendant's friend |
| Dec. 10. 2015 | iPad Mini 4 Wi-Fi Cell. 16BG ($518) | Dec. 24, 2015 | Defendant's family member |
| Mar. 9, 2016 | MacBook 12.0 1.2GHZ ($1,053) | June 20, 2016 | Defendant's associate |
| Apr. 4, 2016 | iPad Pro 9.7 Wi-Fi Cell. 128GB ($861) | Apr. 5, 2016 | Defendant's friend |
| Apr. 4, 2016 | iPad Pro 9.7 Wi-Fi Cell. 128GB ($861) | Apr. 6, 2016 | Defendant's family member |
| Aug. 7, 2017 | MacBook Pro 13.3 3.1GHZ ($1,673) | Nov. 6, 2017 | subordinate officer's family |
| Oct. 31, 2017 | iPad Pro 10.5-inch Wi-Fi 256GB ($892) | Oct. 31, 2017 | Defendant's family member |
| Nov. 3, 2017 | iPad Pro 12.9-inch 256GB ($911) | Nov. 19, 2017 | subordinate officer's family |
| Nov. 22, 2017 | iPad Mini 4 Wi-Fi 128GB ($383) | Dec. 25, 2017 | Defendant's friend |
| Mar. 2, 2018 | HomePod ($349) | Mar. 2, 2018 | Defendant |
| Mar. 2, 2018 | HomePod ($349) | Mar. 3, 2018 | subordinate officer |
| July 25, 2018 | iPad Pro 10.5-inch Wi-Fi 512GB ($1,106) | Dec. 5, 2018 | subordinate officer's family |

**Restoration of Antique Cars**

cc)     At all times relevant to the indictment, Knox County owned a building located at 514 Bernard Avenue, Knoxville,  TN 37921, commonly known as the "Blue Building," which the County allowed the Narcotics Unit to use for official duties, such as assembling and maintaining undercover equipment.

dd)     Between August 2015 and September 2018, the defendant and his subordinate officers used the Blue Building to restore several classic cars that they owned.

ee)     During workdays, the defendant and several subordinate officers worked on and restored the defendant's cars—a 1968 Chevrolet Chevelle and a 1972 Ford F-100—and at least one classic car—a 1968 Chevrolet Camaro—owned by a subordinate officer.

10

ff)	On at least one occasion during the conspiracy period, the defendant directed two of his subordinate officers to pick up a frame for the defendant's '68 Chevelle in Nashville.  At defendant's instruction, the subordinate officers used both a KCSO trailer to haul the frame back to Knoxville and the KCSO gas card for fuel.

gg)	The defendant directed subordinate officers to purchase the following items to use for their personal use in the Blue Building to work on and restore their personal vehicles:

| Approximate Date of Purchase | Payment Method / Amount | Item Purchased | Beneficiary |
| --- | --- | --- | --- |
| October 23, 2015 | Purchase Order / $3,595 | 10,000-lb. automotive lift | Defendant and subordinate officers |
| November 18, 2015 | Card / $198.01 | tree-style rack | Defendant |
| September 18, 2017 | Card / $643.21 | paint guns | Defendant |

**Construction and Renovation Projects During the Workday**

hh)	On or about August 21, 2017, the defendant directed a group of on-duty subordinate officers to do various projects at the residence of defendant's family member, including building a swing-set, installing a refrigerator water line, hooking up a garbage disposal drain, anchoring a cabinet to the living-room wall, and moving furniture into the residence.

ii)	In or around November 2017, the defendant directed a group of subordinate officers to do various projects for the defendant's friend's girlfriend, including moving personal items and furniture from a condo to a house that was twenty miles away.  The subordinates followed the defendant's instruction and also used a KCSO-owned box truck to move the furniture.

jj)	On or about December 14, 2017, the defendant directed a subordinate to replace the glass in a cabinet at the residence of one of the defendant's family members, which the subordinate did.

11

kk)    In or around March 2018, the defendant directed a group of on-duty subordinate officers to build a privacy fence at the former Knox County Sheriff's personal residence.  The subordinates purchased supplies, including two fence panels and two fence-post caps, and built the fence.  The project took a full day.

ll)    On or about March 2, 2018, the defendant directed a group of subordinate officers to install a metal roof on the residence of another subordinate officer, which the officers did.

mm)    The five subordinate officers who completed the metal-roof project took a picture of themselves standing on the finished roof.  An officer who was not participating in the metal-roof project texted the five officers on a group chain, saying, "Last time I checked tho my badge didn't say construction worker on it tho...it said Officer.  So u guys can keep talking shit...I'll be here doing police stuff and u guys can do that."

nn)    One of the officers who did participate in the metal-roof project responded to the group, saying, "Two words...Chief Henderson."

oo)    A former Captain, who was subordinate to the defendant, but superior in rank to the five officers who installed the metal roof, replied to the group text stating that the five officers were doing "manual labor that they don't want to be doing either," but that, "We do what we have to do.  Sometimes it isn't fun but it makes up for it on the fun days.  You learn 3 things in this unit.  1. How to keep your mouth shut when needed.  2.  When the Chief needs something done, we do it.  3. Take care of SIU [Special Investigations Unit] before anyone else.  You want to piss me off?  Tell me you got paperwork to do and teaching a class again next time your partners are having to put on a fucking roof.  Refer to number 3 above.  Let this be a lesson learned."

pp)    In July 2018, the defendant directed groups of on-duty subordinate officers to do various projects at his personal residence, including building a screened-in porch over a five- to

12

six-day period, and renovating the garage.  The subordinates completed both projects.  During the garage-renovation project, the defendant instructed a subordinate officer to use $48.46 from the Fund to purchase refreshments.

qq)　　In accordance with Fed. R. Crim. P. 11(c)(1)(B), the parties recommend that, for sentencing purposes, the loss amount exceeded $40,000 but did not exceed $95,000.  This recommendation is not binding on the Court, and the defendant may not withdraw his guilty plea if the Court rejects the parties' recommendation.

5.　　The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

a)　　the right to plead not guilty;

b)　　the right to a speedy and public trial by jury;

c)　　the right to assistance of counsel at trial;

d)　　the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e)　　the right to confront and cross-examine witnesses against the defendant;

f)　　the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

g)　　the right not to testify and to have that choice not used against the defendant.

6.　　Pursuant to Rule 11(c)(1)(C), the defendant and the United States agree that a sentence of time served, followed by a one-year term of supervised release, is the appropriate disposition of this case.  Additionally, the Court may impose any lawful fines and any special assessment fees as required by law, and order forfeiture as applicable and restitution as appropriate.

13

In the event the Court declines to accept this agreement, either party will be free to withdraw from the plea agreement.

7.    Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that constitute or are derived from proceeds obtained directly or indirectly as a result of the offense in violation of 18 U.S.C. § 371.

The defendant agrees to forfeit the defendant's interest in the following properties:

1. Dell laptop, blue in color, S/N: 9DTZRQ1.
2. LG CD/DVD player.
3. Graco Magnum paint sprayer.
4. Verizon Samsung Network Extender.
5. Bissell Spot Bot.
6. Streamlight Knucklehead rechargeable LED worklight.
7. LG Tone-Free wireless earbuds, S/N: 02224702024999EME000.
8. LG External DVD Writer.
9. Insignia 6ft HDMI Cable.
10. Two Insignia Advanced Memory Card Readers.
11. Apple Mac Mini, S/N: C07PG0GGG1HY.
12. Two Weldex Square Cams, S/N: WDGJ06.
13. Outers Universal Cleaning Kit
14. Two Dash Cameras- Cobra Drive HD Dual Camera Dash Cam, S/N: J704019637; Rexing Dash Cam.
15. Six digital cameras- Vivitar digital camera, S/N: 9T9VIVC61A0013X and case; Samsung digital camera HMX-W300; Sony Cyber Shot digital camera, Model: DSC-H55; Sony digital camera, Model: DSC-H20; Samsung digital camera, S/N: 165SC90ZA07429D; Nikon Cool Pix S9400 digital camera.
16. Two external hard drives- Seagate 1TB external hard drive, S/N: 9ZF2A5-500; Lacie 1TB external hard drive, S/N: NL372LHV.

17. Two video cameras- Panasonic video camera, S/N: DN7FD001607; Sony HandyCam, Model: DCR-SR47.

18. EO Tech Holographic Weapon Sight.

19. Apple iPad Mini 4 Smart Cover.

20. Apple iPad Pro Smart Keyboard.

21. Apple iPad Pro leather sleeve.

22. Yeti cooler, white in color.

23. Ring Camera, S/N: BHS2LH1626005981.

24. Apple TV with remote, S/N: F6LPQHM2FF54.

25. Three DropCam cameras- DropCam, Unknown S/N; DropCam, S/N: 30BCFBC1D50B; DropCam, S/N: 308CFBCB2B2B.

26. Two Apple USB-C to USB Adapters, One Apple Lightning to SD Card Camera Reader, and One USB-C Digital AV Multiport Adapter.

27. Apple iPad, S/N: DMPW7212HPT4 in box.

28. Apple iPad, S/N: GCTW3754HLJL.

29. Apple iPad, S/N: DLXML2APF4YG.

30. Apple iPad, S/N: V5035KXZA90.

31. Apple iPad, S/N: V5032XPLETU with black case.

32. Three Google Nest Indoor cameras.

33. Two Apple USB Super Drives, MD564LL/A.

34. Wyze Cam Pan, Model: WYZECP1.

35. Two Apple Pencils.

36. Apple Watch S3, S/N: FHLVH0U4J6GH.

37. Apple iPad Mini, S/N: F9FQL1PSGHK9.

38. Apple iPad Pro, S/N: DMPXK5PUKD80 with black case.

39. Apple iPad Pro, S/N: DLXTK0KQHPDV.

40. Apple iPad Pro, S/N: DLXS803FGMW5.

41. Apple MacBook, S/N: C02RR0G8GTHV.

42. Apple MacBook Pro, S/N: C02PVLV4G8WP.

43. Apple iPad, S/N: DMPVD38QHPDV with black and clear case.

44. Apple iPad Pro box, S/N: DMPVD38QHPDV.

45. Apple iPad Pro box, S/N: DLXTK0KQHPDV.

15

46. Apple HomePod, S/N: CC4W47Q3HQK8, Model: A1639.

47. Apple iPad, S/N: DLXR80T6GXQ4 with black case.

48. Apple iPad, S/N: DMPRC02FGXQ4 with orange case.

The defendant further agrees to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

In the event a money judgment forfeiture is ordered, the defendant agrees to send all money judgment payments to the United States Marshals Service. The defendant also agrees that the full money judgment amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody, the defendant agrees that the Bureau of Prisons will have the authority to establish payment schedules to ensure payment of the money judgment. The defendant further agrees to cooperate fully in efforts to collect on the money judgment by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of the money judgment without notifying defendant's counsel and outside the presence of the defendant's counsel.

16

8.     The defendant agrees that the Court shall order restitution, pursuant to any applicable provision of law, for any loss caused to: (1) the victim of any offense charged in this case; and (2) the victim of any criminal activity that was part of the same course of conduct or common scheme or plan as the defendant's *charged* offense. The defendant agrees, pursuant to 18 U.S.C. § 3663(a)(3), that the order of restitution will be in the amount of $20,591, which represents the monetary value of all the Apple Products listed in the plea agreement.

9.     Financial Obligations. The defendant agrees to pay all fines and/or restitution to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

17

a)      If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b)      The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c)      If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10.      The defendant voluntarily, knowingly, and intentionally agrees to the following:

a)      The defendant will not file a direct appeal of his conviction or sentence.

b)      The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c)      The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

11.      The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States.  Under

18

federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of the defendant's conviction on immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences the plea may entail, even if the consequence is automatic removal from the United States.

12. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

13. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though

there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

14.     This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

8/22/2025
Date

By: _William A. Roach_
William A. Roach, Jr.
Assistant United States Attorney

8/22/2025
Date

Frank M. Dale, Jr.
Assistant United States Attorney

8/22/2025
Date

_William A. Roach, for_
Michael S. Deel
Assistant United States Attorney, with permission

8 21-25
Date

David Henderson
Defendant

08-22-2025
Date

Robert R. Kurtz
Attorney for the Defendant

20